UNITED STATES of America, Appellee,

v.

Luis COLON, Defendant–Appellant.

No. 726, Docket 91–1360.

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1992.

Decided April 6, 1992.

Leonard J. Levenson, New York City, for defendant-appellant.

Andrew S. Dember, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Michele Hirshman, Asst. U.S. Atty., on the brief), for appellee.

Before: NEWMAN and KEARSE, Circuit Judges, and CEDARBAUM, District Judge.*

JON O. NEWMAN, Circuit Judge:

This appeal in a Sentencing Guidelines case concerns primarily the aggregation of drug quantities for purposes of determining a base offense level and the appropriate procedure in the event of a modification of the guidelines after imposition of a sentence and while the sentence is pending on direct review. These issues arise on an appeal by Luis Colon from the May 15, 1991, judgment of the District Court for the Southern District of New York (John M. Walker, Judge) convicting him, following his plea of guilty, of conspiring to distribute, and to possess with intent to distribute, heroin, in violation of 21 U.S.C. § 846 (1988), and also substantive violations of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), 845a(a) (1988). We conclude that the District Court's determination of Colon's base offense level was within the Court's authority and that the benefit, if any, resulting from modification of the guidelines after imposition of sentence is a matter to be pursued in the District Court. We therefore affirm.

### Facts

Colon's sentencing has been extremely protracted. On July 14, 1988, Colon pleaded guilty before then District Judge Walker to all counts of the indictment and was sentenced on October 11, 1988. His offenses continued after November 1, 1987, rendering him subject to sentencing under the Guidelines. *See United States v. Story*, 891 F.2d 988, 993–96 (2d Cir.1989). Judge Walker had previously held the Sentencing Guidelines unconstitutional but nevertheless referred to them for general guidance in selecting Colon's sentence. He sentenced Colon to concurrent terms of fifteen years of imprisonment and twelve years of supervised release on each count. Colon's appeal of his sentence was withdrawn following the Supreme Court's deci-

sion upholding the constitutionality of the Sentencing Guidelines, *see Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and the case was remanded to the District Court for resentencing under the Guidelines.

On that first remand, the District Court, proceeding under the Sentencing Guidelines, again imposed a sentence of concurrent fifteen-year terms of imprisonment and twelve years' supervised release on each count. In selecting this sentence, Judge Walker made an upward departure from a guideline range of 57 to 71 months. The departure was based on quantities of narcotics sold by Colon as part of the same course of conduct as the offenses of conviction. On May 18, 1990, this Court vacated that sentence and remanded the case for resentencing, holding that such quantities should have been incorporated into the calculation of the base offense level, rather than used as the basis for an upward departure. *United States v. Colon*, 905 F.2d 580, 586–87 (2d Cir.1990) (*Colon I*). In remanding for resentencing, we acknowledged that, in this case, using the uncharged heroin sales to enhance the base offense level rather than as a ground for a discretionary upward departure would likely have no practical impact on the ultimate sentence. *Id.* at 587. However, we believed that remand was necessary to allow defense counsel to challenge the determination of the amounts of the uncharged sales, and to permit the District Court to determine whether these sales were proven by a preponderance of the evidence.

After our remand, Colon sought to recuse Judge Walker. That application was denied, and the District Court received submissions from both the Government and Colon as to the appropriate guideline range to be applied. Judge Walker conducted a *Fatico* hearing, at Colon's request, to allow Colon to challenge both the quantities and types of narcotics involved in the uncharged transactions and whether the uncharged sales were part of the same course

---

* The Honorable Miriam Goldman Cedarbaum of the United States District Court for the Southern District of New York, sitting by designation.

of conduct. Ultimately, Judge Walker determined that the uncharged sales were part of the same course of conduct and that 400 grams was the appropriate quantity upon which to calculate the base offense level. On May 15, 1991, Colon was resentenced to concurrent terms of 168 months' (fourteen years') imprisonment on each of the ten counts, and concurrent terms of twelve years' supervised release on nine counts and six years' supervised release on one count.

### Discussion

1. *Base offense level calculation.* Colon contends that his sentence should be vacated because the evidence upon which the District Court relied in determining his base offense level was legally insufficient to establish either the quantity of heroin sold in the uncharged sales or that the uncharged sales were part of the same course of conduct or common scheme or plan as the charged sale. This claim is without merit.

In narcotics cases, the Sentencing Guidelines provide for determination of a base offense level based on the quantity of narcotics involved. Guidelines, § 2D1.1. Where the quantity of drugs charged in the indictment or seized from the defendant does not fully reflect his narcotics sales, the Guidelines require that quantities that were part of the "same course of conduct" or "common scheme or plan" as the offenses of conviction be included in determining the base offense level, based on an approximation of their quantity by the sentencing judge. Guidelines, §§ 1B1.3(a)(2), 2D1.4; *United States v. Schaper*, 903 F.2d 891, 898 (2d Cir.1990); *Colon I*, 905 F.2d at 586–87. The Government need prove the existence of those quantities only by a preponderance of the evidence, *United States v. Shoulberg*, 895 F.2d 882, 886 (2d Cir. 1990), and a District Court's factual findings are binding unless clearly erroneous. Judge Walker's calculation of the quantity of heroin involved was supported by the evidence. Colon's admissions to the Probation Department were a proper basis upon which to estimate the scope of his sales activities. *See United States v. Vazzano*, 906 F.2d 879, 884 (2d Cir.1990) (a defendant's trustworthy admissions may be used in estimating the uncharged, unseized quantities involved). On the prior appeal, we determined that Colon has waived any claim of error that he was not informed of his right to remain silent at the presentence interview and was questioned without the presence of counsel. *Colon I*, 905 F.2d at 588.

During the presentence investigation, Colon told the probation officer that he had sold 80 glassine envelopes every two or three days for a "few years" to support his drug and alcohol addictions. Judge Walker found that Colon had engaged in these heroin sales over at least a two-year period, but he adopted a conservative 300-day period and estimated sales during that period at a rate of 80 glassine envelopes every 3 days. The Judge then used the weight of the glassine envelopes sold by Colon in the counts of conviction and multiplied the resulting 8,000 bags by .05 grams, to arrive at 400 grams as the appropriate quantity upon which to calculate the base offense level.

The quantities of heroin that Colon was convicted of selling to undercover officers and possessing at the time of his arrest corroborate the accuracy of his admissions. Colon sold 60 glassine envelopes of heroin to undercover officers during a four-day period and was found in possession of 89 additional glassines when he was arrested one week later. All of these glassine envelopes contained approximately .05 grams of heroin. The commentary to the Guidelines suggests that the sentencing judge should approximate the quantity of unseized drugs based upon, among other factors, "similar transactions in controlled substances by the defendant." Guidelines, § 2D1.4, comment. (n. 2).

The District Court was not clearly erroneous in determining that these uncharged sales were part of the same course of conduct. The evidence was sufficient to indicate that Colon had repeated the same type of criminal activity over time and "has en-

gaged in an identifiable 'behavior pattern' of specified criminal activity." *United States v. Perdomo*, 927 F.2d 111, 115 (2d Cir.1991) (quoting *United States v. Santiago*, 906 F.2d 867, 872 (2d Cir.1990)).

2. *Recusal.* Colon next contends that Judge Walker erred in failing to recuse himself. Colon argues that the appearance of bias was created by Judge Walker's imposition of fifteen-year sentences on two prior occasions and the speculation that we would be reluctant to reverse for the second time a sentence imposed by a judge who now serves on this Court. A federal judge shall recuse himself in any proceeding where his "impartiality might reasonably be questioned," particularly, where the judge "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a), (b)(1). However, such personal bias means prejudice based on "extrajudicial" matters, and earlier adverse rulings, without more, do not provide a reasonable basis for questioning a judge's impartiality. *Schiff v. United States*, 919 F.2d 830, 834 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991). Moreover, the record plainly demonstrates that Colon's claim is without merit. Judge Walker did not mechanically reimpose the previous sentence, which, in any event, had been chosen with an eye to the relevant guidelines. Instead Judge Walker granted Colon's application for a *Fatico* hearing, requested an updated probation report, and gave due consideration to Colon's incarceration record in determining his sentence. Finally, citation is not necessary to recall that this Court has not hesitated to exercise its oversight responsibilities without regard to the fact that the decision being reviewed was rendered by a member of our bench.

3. *Guideline amendment.* On November 1, 1991, after imposition of the sentence now being reviewed, the Sentencing Commission amended the commentary to the relevant conduct guideline, section 1B1.3, by adding application note 7, which includes the following:

7. For the purposes of subsection (a)(2) [of section 1B1.3], offense conduct associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense (the offense of conviction) is not considered as part of the same course of conduct or common scheme or plan as the offense of conviction.

Guidelines, appx. C (amendment 389) (Nov. 1, 1991). Colon alleges in his reply brief that he was convicted on December 3, 1985, and again on July 1, 1987, of criminal sale of a controlled substance in violation of state law for selling drugs in the same general area of Manhattan where he was arrested in the pending federal case. The Sentencing Commission has made it clear that offense conduct "associated with" a prior state sentence is not to be considered relevant conduct for purposes of section 1B1.3(a)(2). *See* Guidelines, § 1B1.3, comment. (n. 7, example 1).

Though the present record is not entirely clear, it appears likely that, had application note 7 been in effect on May 15, 1991, when the current sentence was imposed, some of the selling activity counted by Judge Walker as relevant conduct would have been precluded from consideration because of the prior state sentences. If Judge Walker meant to consider as relevant conduct only the most recent 300 days of selling prior to Colon's federal arrest, at least a few days of that activity would have occurred prior to Colon's arrest on the 1987 state charge. Alternatively, if Judge Walker was considering as relevant conduct Colon's selling activity extending well into the past and simply estimated that he had sold on 300 days in recent years, but not necessarily 300 consecutive days, a considerable portion of the activity would have occurred prior to the state arrest. Either way, the 300 days of selling is likely to have included some period "associated with" his state sentences, and Colon would therefore likely benefit from note 7, if, as he contends, it applies retroactively to his case. We are therefore obliged to consider the significant issue of whether guideline amendments that are adopted after imposition of a sentence and that might benefit defendants are to be applied retroactively by a court of appeals to cases pending on

direct review. In view of the frequency of guideline amendments, this issue is likely to recur in the future, though it appears at this point to be a matter of first impression in this Circuit.

The Supreme Court has instructed that "a court [on direct review] is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). That "law in effect" canon has been applied to a regulatory change. *See Thorpe v. Housing Authority*, 393 U.S. 268, 281–82, 89 S.Ct. 518, 525–26, 21 L.Ed.2d 474 (1969). The First Circuit has ruled that the "law in effect" canon does not apply in the field of substantive criminal law. *See United States v. Havener*, 905 F.2d 3, 5–6 (1st Cir.1990). We need not decide whether the canon is applicable generally throughout the field of criminal substantive law, because we are persuaded that, even if the canon applies, there exists sufficient statutory direction "to the contrary" to preclude appellate courts, in the first instance, from entertaining requests to apply post-sentence guideline amendments retroactively to cases pending on direct review. Our conclusion, however, would not preclude the application to pending cases of amendments that merely clarify. *Cf. United States v. Guerrero*, 863 F.2d 245, 249–50 (2d Cir.1988) (applying post-offense clarifying amendment).

The "contrary" statutory direction or legislative history that the Supreme Court has indicated would vary the application of an amended law to cases pending on direct review will normally relate to the amended law itself, as when an amendment explicitly provides that it is to have only prospective effect. We have also recognized that the presumption in favor of retroactivity may be rebutted by legislative indications less explicit than a requirement of prospectivity. *See Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 746 F.2d 168, 174 (2d Cir.1984). However, we see no reason to confine our inquiry to the amendment at issue, especially when the amendment is the product of an agency. In such circumstances, it seems especially appropriate to examine the legislative scheme under which the agency operates.

Initially, we note that Congress directed a sentencing court to consider, among other things, the sentencing ranges set forth in the Sentencing Commission's guidelines "that are in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4) (1988). Moreover, a reviewing court is to consider, among other things, whether a sentence was "imposed" as a result of an incorrect application of the guidelines. 18 U.S.C. § 3742(e)(2) (1988). Though in combination these provisions can be read to suggest preclusion of appellate consideration of guideline amendments adopted after imposition of sentence, the argument is not conclusive. The instruction to the sentencing court seems designed to make sure that the court looks beyond guidelines in effect at the date of the offense and, subject to the limitations of the *Ex Post Facto* Clause, applies the guidelines in effect at the date of sentencing. Obviously, the sentencing court could not be expected to anticipate changes made after sentencing. Nor does the fact that the appellate court is to consider the lawfulness of the sentence "imposed" necessarily preclude application, under *Bradley*, of guidelines existing when the appellate court acts. All appellate courts consider the lawfulness of the action taken by the trial court; if the directive in a review statute to assess the action taken by the district court precluded retroactivity under *Bradley*, the *Bradley* rule would have little if any application.

More pertinent to our inquiry, we believe, is the explicit authority conferred by Congress on a sentencing court to reduce the term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 18 U.S.C. § 994(o)." *See* 18 U.S.C. § 3582(c)(2) (1988). By imposing upon the Commission a continuing duty to revise the guidelines, and by authorizing, but not requiring, sentencing courts to reduce sentences in light of guideline revisions, Congress appears to have expressed a prefer-

ence for discretionary district court action in response to Commission changes, rather than for mandatory appellate court application of all post-sentence Commission changes to pending appeals. We need not decide at this point whether section 3582(c)(2) applies broadly, allowing modification in light of all Commission changes in guidelines, policy statements, or commentary that would result in a sentence lower than the sentence imposed, or whether it applies more narrowly only to those changes that precisely reduce an actual sentencing range. Whatever the scope of section 3582(c)(2), it adequately indicates that Congress did not wish appellate courts on direct review to revise a sentence in light of changes made by the Commission after the sentence has been imposed.

In thus finding in section 3582(c)(2) legislative indication sufficiently "contrary" to the "law in effect" canon to preclude application of post-sentence guideline changes by a court of appeals to cases pending on direct review, we need not determine either the scope of section 3582(c)(2) or the retroactivity of amendment 389. *Compare United States v. Mooneyham,* 938 F.2d 139, 140–41 (9th Cir.) (holding amendment 266 not retroactive), *cert. denied,* — U.S. —, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991) *with United States v. Park,* 951 F.2d 634, 636 (5th Cir.1992) (holding amendment 379 retroactive). We note that the amendment is not among those explicitly stated to be retroactive by the Sentencing Commission, *see* U.S.S.G. § 1B1.10(d) (policy statement), but we are not deciding the effect of this policy statement, nor its relationship to section 3582(c)(2). It will be for the District Court, in the first instance, to determine, on application or *sua sponte,* to what extent, if any, it has authority to apply amendment 389, and whether, even if the Court decides (or assumes, for purposes of an application) that it has adequate authority to apply the amendment, it wishes to exercise its discretion to do so.

The judgment of the District Court is affirmed.