UNITED STATES of America,
Appellee,

v.

Stephen J. SABBETH, Defendant–
Appellant,

Carole Sabbeth, also known as
Carole Fiore, Defendant.

Docket No. 00–1586.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 5, 2001.

Jan. 11, 2002.

Lewis J. Liman (Adam M. Abensohn, Arlo Devlin–Brown, on the brief), Wilmer, Cutler & Pickering, New York, NY, for Defendant–Appellant.

Charles S. Kleinberg, Assistant United States Attorney (Susan Corkery, Assistant United States Attorney, of counsel, Alan Vinegrad, United States Attorney, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellee.

Before WALKER, Chief Judge, CABRANES and STRAUB, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Following a jury trial, defendant Stephen Sabbeth was convicted in the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge* ) of bankruptcy fraud, in violation of 18 U.S.C. § 152; money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and other related offenses. On July 21, 2000, the District Court sentenced Sabbeth principally to 97 months of imprisonment. We affirmed Sabbeth's conviction and sentence in an opinion filed August 21, 2001. *United States v. Sabbeth*, 262 F.3d 207 (2d Cir.2001). In affirming Sabbeth's sentence, we concluded that the District Court properly refused to group Sabbeth's money laundering and fraud convictions pursuant to Section 3D1.2(b) of the United States Sentencing Guidelines. *Id.* at 221. Sabbeth first petitioned for reconsideration on September 4, 2001, on grounds unrelated to the motion now before us, and on October 16, 2001, we denied that motion for reconsideration by summary order.

Sabbeth now presents a second motion for reconsideration based upon a recent amendment to the Sentencing Guidelines that became effective on November 1, 2001. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") supp. to app. C, amend. 634 (2001), at 229–236; *see also* U.S.S.G. § 2S1.1 (2001). Sabbeth argues that the amendment "clarifies" that fraud and money-laundering offenses are to be "grouped" under the Sentencing Guidelines, and he asserts, accordingly, that the amendment should be applied retroactively to his sentence. At Sabbeth's sentencing, the District Court, after refusing to group the fraud and money-laundering offenses, found that Sabbeth's Total Offense Level was 30. In light of Sabbeth's Criminal History Category of I, the District Court considered the prescribed sentencing range of 97–121 months and sentenced Sabbeth primarily to 97 months of imprisonment.[1] Sabbeth asserts, based upon the recent amendment to the Sentencing Guidelines, that his fraud and money-laundering offenses should be grouped, resulting in a Total Offense Level of 28 and a sentencing range of 78–97 months of imprisonment. Accordingly, he argues that this Court should vacate the judgment of the District Court and remand the cause for resentencing.[2] For the reasons stated

---

1. We take this occasion to correct a misstatement in our original opinion. We observed that the District Court had declined to group Sabbeth's money-laundering and fraud offenses, and, misreading the relevant table, wrote: "[T]he result was that Sabbeth's total offense level was increased from 28 to 30, which, in light of his Criminal History Category of I, increased his sentencing range from 87–108 months to 97–121 months." *Sabbeth*, 262 F.3d at 221 n. 12. However, a Total Offense Level of 28, in light of Sabbeth's Criminal History Category of I, results in a sentencing range of 78–97 months, not 87–108 months. Therefore, the District Court's refusal to group the offenses at issue actually increased Sabbeth's sentencing range from 78–97 months to 97–121 months.

2. We note that the sentence that Sabbeth principally received—namely, 97 months of imprisonment—is within the sentencing range that would apply to him if his money-laundering and fraud offenses were grouped. Even if he were to prevail on this motion, Sabbeth could, in principle, be resentenced to the term of imprisonment that the District Court initially imposed. *Cf. United States v. Bermingham*, 855 F.2d 925, 934–35 (2d Cir.1988) ("[A] reviewing court ... need not select between the two arguably applicable guideline ranges if it is satisfied that the same sentence would have been imposed under either guideline range.")

below, we find no merit in any of Sabbeth's arguments and therefore deny his motion.

## I

 We have held that "[a] defendant sentenced under one version of the Guidelines may ... be given the benefit of a later revision if the revision represents not a substantive change but merely a clarification of the [United States] Sentencing Commission's prior intent." *United States v. Kim,* 193 F.3d 567, 578 (2d Cir.1999); *see also United States v. Kirkham,* 195 F.3d 126, 131 (2d Cir.1999) (observing that "this Court is required to apply amendments to the Guidelines that clarify their application on direct review"). Where the Sentencing Commission "states its intent in making the change," we give "considerable deference" to its characterization. *Kim,* 193 F.3d at 578.

## II

The Sentencing Commission amended Section 2S1.1 and deleted Section 2S1.2 of the Sentencing Guidelines effective November 1, 2001, after Sabbeth's sentence had been imposed and affirmed. *See* U.S.S.G. supp. to app. C, amend. 634 (2001), at 229 236; *see also* U.S.S.G. §§ 2S1.1, 2S1.2 (2001). Amendment 634 in part introduced Application Note 6 of Section 2S1.1, which provides the following:

> In a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived, the counts shall be grouped pursuant to subsection (c) of § 3D1.2 (Groups of Closely–Related Counts).

U.S.S.G. § 2S1.1, application note 6. The Sentencing Commission did not characterize the amendment as "clarifying." In providing for the grouping of a conviction for money laundering and a conviction for the underlying offense giving rise to the money laundering, the Sentencing Commission merely stated that Application Note 6 "resolv[ed] a circuit conflict on this issue." U.S.S.G. supp. to app. C, amend. 634, at 235.

In Amendment 634, the Sentencing Commission observed that, prior to the promulgation of Application Note 6, several circuits disagreed as to whether money laundering should be grouped with its underlying offenses under Section 3D1.2(b) or (d), or not grouped at all. U.S.S.G. supp. to app. C, amend. 634, at 235. *Compare, e.g., United States v. Cusumano,* 943 F.2d 305, 312–14 (3d Cir.1991) (allowing grouping under subsection (b)) and *United States v. Leonard,* 61 F.3d 1181, 1186 (5th Cir.1995) (allowing grouping under subsection (d)) *with United States v. Kneeland,* 148 F.3d 6, 15–16 (1st Cir.1998) (affirming decision not to group under subsection (d)). Although our Circuit has not foreclosed the possibility of grouping money laundering with its underlying offenses, thus far, we have not allowed grouping. *See United States v. Napoli,* 179 F.3d 1, 6–13 (2d Cir.1999) (not allowing grouping under subsection (b) or (d)); *United States v. Kalust,* 249 F.3d 106, 108–110 (2d Cir.) (not allowing grouping under subsection (b)), *cert. denied sub nom. Percan v. United States,* —— U.S. ——, 122 S.Ct. 213, 151 L.Ed.2d 152 (2001).

 Sabbeth argues that the introduction of Application Note 6 to resolve a circuit split on the question of grouping is persuasive evidence that the Sentencing Commission merely clarified and did not modify existing law. Sabbeth asserts that when the Sentencing Commission resolves a circuit split, the Sentencing Commission has usually acted to clarify the law. *See United States v. Innie,* 77 F.3d 1207, 1209 (9th Cir.1996) (" 'An amendment that re-

solves a circuit split generally clarifies and does not modify existing law.'" (quoting *United States v. Sanders,* 67 F.3d 855, 857 (9th Cir.1995))). In this case, although the Sentencing Commission did not expressly state that Amendment 634 was "clarifying," Sabbeth claims that the fact that (1) Application Note 6 resolved a circuit split by allowing grouping and (2) the text of Section 3D1.2,[3] which generally governs grouping, was left unchanged, reveals the Sentencing Commission's intention to issue a clarifying amendment.

We disagree. Sabbeth mistakenly focuses on the addition of Application Note 6 to Section 2S1.1 for the proposition that the amendment is simply "clarifying." In so doing, Sabbeth fails to recognize the significance of the fact that the amended version of Section 2S1.1 redefines the way in which the offense level associated with the crime of money-laundering is calculated, so that the offense level for money-laundering may now be dependent upon the offense level assigned to the underlying offense. *See* U.S.S.G. § 2S1.1(a)(1) (2001). As such, Application Note 6 does far more than simply "clarify." Rather, it specifically instructs how calculations should proceed under this new regime when separate criminal counts of (1) money-laundering and (2) an underlying offense are at issue. To that end, Application Note 6 instructs that, for the first time, these two, separate criminal counts— money laundering and its underlying offense—should be grouped together pursuant to U.S.S.G. § 3D1.2(c). U.S.S.G § 2S1.1 application note 6 (2001). In this way, Application Note 6 offers much needed guidance for implementing the new sentencing guideline, Section 2S1.1. The fact that Section 3D1.2, a general provision on grouping, has not been altered is, therefore, beside the point. We conclude, based on the comprehensive nature and extent of the Sentencing Commission's changes, that the introduction of Application Note 6 is clearly substantive. *See Ebbole v. United States,* 8 F.3d 530, 538 (7th Cir.1993) (concluding that an amendment that "replaced the entire text of the pre-existing Guideline" and altered formula for computing acceptance of responsibility was substantive); *cf. Miller v. Florida,* 482 U.S. 423, 433–34, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (concluding that an amendment to a state's sentencing guideline was substantive and not procedural in part because it increased the points awarded for sexual offenses).

■ While there are no absolutely clear lines of demarcation between a substantive and clarifying amendment, we find persuasive the Third Circuit's approach and consider as important factors: (1) "the lan-

---

**3.** Section 3D1.2 of the Sentencing Guidelines provides, in relevant part:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
. . .
(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.
Offenses covered by the following guidelines are to be grouped under this subsection: . . . §§ 2S1.1, 2S1.3.
U.S.S.G. § 3D1.2 (2001)

guage of the amendment"; (2) "its purpose and effect"; and (3) "whether the guideline and commentary in effect at the time of sentencing is consistent with the amended sentencing manual." *United States v. Diaz,* 245 F.3d 294, 303 (3d Cir.2001).

First, Application Note 6, which consists of newly-drafted text, is part of a thoroughly revised Section 2S1.1, as explained above. The new Section 2S1.1 consolidates the section for money laundering (the former Section 2S1.1) with the section entitled "Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity" (the former Section 2S1.2). Under the new Section 2S1.1, however, the offense level for money laundering is calculated by taking the offense level for the underlying offense that generated the laundered funds and then adding to it points deemed specific offense characteristics. U.S.S.G. § 2S1.1 (2001). This is in stark contrast to the former Section 2S1.1, in which the base offense level was set at either 20 or 23 points and was not dependent on the offense level of the underlying offense. U.S.S.G. § 2S1.1 (1998). (Sabbeth was sentenced on July 21, 2000, under the 1998 edition of the Guidelines). In addition, no previous Sentencing Guidelines section, application note, or other commentary specifically discussed the grouping of fraud and money-laundering offenses.

In reflecting Section 2S1.1's change in philosophy and method for calculating the offense level, the new Application Note 6 prescribes grouping pursuant to *subsection (c)* of Section 3D1.2 (which applies where one count embodies conduct relevant under the Guidelines as an adjustment to the offense level of another count), whereas the circuits that had endorsed grouping of fraud and money-laundering had relied on either subsection (b) (counts involving same victim and common plan) or subsection (d) (related counts where offense level is based on total loss or harm amount). *See, e.g., Cusumano,* 943 F.2d at 312–314 (relying on subsection (b)); *United States v. Walker,* 112 F.3d 163, 167 (4th Cir.1997) (relying on subsection (d)).

Second, the purpose and effect of the revision of Section 2S1.1 demonstrate that Application Note 6 is the result of the substantive revision of the money-laundering guidelines and not simply a separate, independent clarification of the existing law. According to the Sentencing Commission, the purpose in completely revising Section 2S1.1 and 2S1.2, including the promulgation of Application Note 6, was "to promote proportionality by providing increased penalties for defendants who launder funds derived from more serious underlying criminal conduct ... and decreased penalties for defendants who launder funds derived from less serious underlying criminal conduct." U.S.S.G. supp. to app. C, amend. 634, at 234. The grouping of related fraud and money-laundering counts under *subsection (c),* rather than subsection (b) or (d), makes sense only in the context of the new formula of the amended Section 2S1.1 and its underlying philosophy for the calculation of the appropriate offense level. Subsection (c) provides for grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). In this case, because of the revision to Section 2S1.1, the underlying offense of fraud is already directly factored into the computation of the money-laundering offense level; consequently, grouping is now appropriately allowed under subsection (c). Application Note 6, therefore, is a *direct result* of the substantive, extensive revision of Section 2S1.1 and is not simply a clarification of that provision of the Sentencing Guidelines and

a resolution of a conflict among the circuits. *See United States v. Alvarez–Pineda,* 258 F.3d 1230, 1237 (10th Cir.2001) (concluding that an amendment was "substantive" partly because, while the amendment addressed a circuit conflict, it did not adopt *"in toto* either the majority or minority circuit view on th[e] issue" (internal quotation marks and citation omitted)).

Third, the Sentencing Guidelines and commentary at the time of Sabbeth's original sentencing on July 21, 2000, are not consistent with the current amendments. Had the new Section 2S1.1 been in place at the time of Sabbeth's sentence, the entire method of calculating Sabbeth's money-laundering offense level would have been different. Under the amended Section 2S1.1, for example, the district judge would have had to make an additional finding as to whether Sabbeth's actions constituted "sophisticated laundering." U.S.S.G. § 2S1.1(b)(3) (2001). No such finding was required under the version of Section 2S1.1 that applied at the time of Sabbeth's original sentencing.

In sum, after considering the language of the amendment, its effect and purpose, and the consistency or inconsistency of the amendment with the previous version of Section 2S1.1 of the Sentencing Guidelines, we conclude that the changes at issue here are substantive and cannot be characterized as simply "clarifying."

### III

Because the amendment regarding grouping of money-laundering and its underlying offenses is a substantive change to the Sentencing Guidelines, it cannot apply retroactively to affect Sabbeth's sentence. Accordingly, Sabbeth's second motion for reconsideration is denied.